IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

JAMES H. MABREY,

      Plaintiff,

v.                                  CASE NO. 1:15-cv-200-MP-GRJ

CAROLYN W. COLVIN,
Commissioner of Social Security,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the
Commissioner of Social Security (the "Commissioner") denying Plaintiff's
application for Disability Insurance Benefits and Supplemental Security
Income pursuant to Titles II and XVI of the Social Security Act (the Act).
ECF No. 1.  The Commissioner has answered, and both parties have filed
briefs outlining their respective positions.  ECF Nos. 12, 14.  For the
reasons discussed below, the undersigned recommends that the
Commissioner's decision be **AFFIRMED**.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for benefits on November 29, 2011,
alleging disability beginning July 1, 2008, due to severe headaches, back

problems, asthma, and acid reflux.  R. 205.  His claim was denied initially and upon reconsideration.  At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"), on July 22, 2013, at which Plaintiff and a vocational expert (VE) testified.  R. 29-73.  Plaintiff, through counsel, alleged an additional impairment due to intellectual disability.  *Id*.  The ALJ issued an unfavorable decision on February 26, 2014, and the Appeals Council denied review.  R.  1-3, 12-20.

This appeal followed.  Plaintiff alleges (1) that the ALJ erred in finding that his past relevant work was semiskilled to skilled; (2) that the ALJ failed to fully and fairly develop the record by sending Plaintiff for IQ testing when his school records showed an IQ between 50 and 60; and (3) that the ALJ erred in mechanically applying the Guidelines when Plaintiff was only five months away from becoming an "older individual".  ECF No. 12.

## II.  STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person

---

[1] *See* 42 U.S.C. § 405(g) (2000).

would accept as adequate to support the conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

---

[2] <u>Foote v. Chater</u>, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982) and <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* <u>Edwards v. Sullivan</u>, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] <u>Edwards</u>, 937 F.2d at 584 n.3; <u>Barnes v. Sullivan</u>, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] <u>Foote</u>, 67 F.3d at 1560; *accord,* <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); <u>Parker v. Bowen</u>, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] <u>Keeton v. Dep't Health and Human Servs.</u>, 21 F.3d 1064, 1066 (11th Cir. 1994).

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 20016 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11]  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The

---

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.
3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists.  The temporary shifting of the burden to the

Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of

---

Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

jobs in the national economy that the claimant can perform.[19]  Such

independent evidence may be introduced by a Vocational Expert's ("VE")

testimony, but this is not the exclusive means of introducing such

evidence.[20]  Only after the Commissioner meets this burden does the

burden shift back to the claimant to show that he or she is not capable of

performing the "other work" as set forth by the Commissioner.

## III.  SUMMARY OF THE RECORD

### A. Findings of the ALJ

The ALJ determined that Plaintiff has the severe impairments of:

gastroesophageal reflux disease (GERD); asthma; and osteoarthritis of the

lumbar spine, left hip, and jaw.  Plaintiff does not have an impairment or

combination of impairments that meets or equals the listings.  The ALJ

rejected Plaintiff's claim that he met Listing 12.05B for intellectual disability.

Based on the limitations determined by the ALJ, the ALJ concluded

that Plaintiff has the RFC to perform light work with the additional

limitations that he is unable to perform more than frequent stooping,

---

[19] Wolfe, 86 F.3d at 1077-78.

[20] *See id.*

kneeling, crouching, crawling, climbing stairs and ramps, and can only

occasionally climb ladders, ropes, and scaffolds.  The ALJ also assessed

environmental limitations and determined that Plaintiff must avoid hazards

such as unprotected heights and dangerous machinery.  R. 14-15.

Relying on the testimony of a VE, the ALJ found that Plaintiff could

not return to his past relevant work.  The ALJ found that Plaintiff had past

relevant work as a construction worker, a heavy and semiskilled

occupation.  The ALJ found that Plaintiff's past work as a motor vehicle

dispatcher did not constitute past relevant work.  R. 18.  The ALJ found

that Plaintiff was a younger individual on the alleged disability onset date

but had subsequently changed age category to closely approaching

advanced age.  R. 19.  The ALJ determined that a person with Plaintiff's

age, education, work experience, and RFC would be able to perform

various unskilled jobs at the light exertional level that exist in substantial

numbers in the national economy, such as: clerk cashier II; agricultural

sorter; and usher/ticket taker.   The ALJ therefore found that Plaintiff was

not disabled.  R. 19-20.

## B. *Relevant Records*

With respect to Plaintiff's medical records, the only impairment at issue in this appeal is his alleged intellectual disability.  Plaintiff contends that "on the face of the record, [he] has an IQ of 57."  ECF No. 15.  As support for this assertion, Plaintiff points to a public school record from August 1965 reflecting that he scored a 57 on a "California" scholastic ability test.  R. 227.  Plaintiff also points to a mental status examination contained within a consultative examination for left arm pain stating that he: could spell "world forwards but not backwards.  He remembers three out of three words immediately and zero out of three words at eight minutes.  He remembers one out of three words at eight minutes with a general hint.  On repeat testing he remembers zero out of three words several minutes later."  R. 282.  Plaintiff further cites his history of holding only "low-paying day labor type jobs."  ECF No. 15.

## C. *Hearing Testimony*

Plaintiff testified that his work history involved primarily work in the construction industry as a general laborer building houses.  He also performed some roofing work.  As a general laborer, Plaintiff performed

heavy lifting of more than 100 pounds.  As a roofer, he lifted rolls of roofing materials of about 50 pounds.  Plaintiff performed construction work until about 2006 when he went to work as a dispatcher at a cab stand.  Plaintiff performed that work for about a year and then subsequently for about six months following a break.  He last worked as a dispatcher in 2008.

Plaintiff attended high school through ninth grade.  He did not obtain a GED and received no vocational training.  Plaintiff had a driver's license, but it was suspended the week prior to the hearing for a DUI arrest.  Prior to the suspension, Plaintiff used his sister's van and drove an elderly friend to the store to shop.  Plaintiff lives with his sister, and a typical day involves watching Westerns on television, listening to music, and visiting a friend once or twice a week.  Plaintiff helps with household chores, does his laundry, and prepares sandwiches.

Plaintiff testified that he is unable to work due to headaches.  On examination by counsel, Plaintiff testified that he has difficulty concentrating in addition to head pain.  He testified that he had trouble reading in school and needed his sister's help to complete the disability application.  Plaintiff described pain in his left leg and back pain following a

motorcycle accident.  He has pins in his jaw that cause pain.

Plaintiff's counsel stated that school records reflected an IQ of 57, and argued to the ALJ that Plaintiff's IQ score satisfied Listing 12.05B for intellectual disability.  The ALJ questioned whether the record cited by counsel was an IQ test and counsel stated that clarification would be provided.  The records did not reflect that Plaintiff was placed in special education.  Plaintiff testified that he believed he took a special education class for one year in elementary school, but he could not recall specifically in which school or what year.  Plaintiff transferred through several schools due to behavioral issues.

On further examination by the ALJ, Plaintiff could not recall when he first got his driver's license but he remembered taking the written driver's test and a road test.  He testified that he had difficulty understanding the test.

During the VE's testimony, Plaintiff clarified that his prior roofing work was as a roofing helper.  The VE classified Plaintiff's work as a laborer as heavy with a SVP of 4.  The dispatcher work was sedentary with an SVP of 5.  The ALJ posed a hypothetical to the VE that assumed an individual of

Plaintiff's age, education, and experience and the RFC for light work, with additional exertional and nonexertional limitations, as summarized above in the hearing decision.  The VE testified that the person could perform the jobs of cashier, agricultural sorter, and usher/ticket taker.  R. 68.

## IV. DISCUSSION

### A.  *Past Relevant Work and Skill Level*

In Plaintiff's first claim he contends that the ALJ erred in finding that his past relevant work was "semiskilled to skilled when in fact he is an unskilled laborer."  Plaintiff argues that he did not perform work as a motor vehicle dispatcher at the level of substantial gainful activity.  He contends that his work as a laborer did not satisfy the DOT description for "construction worker I" which includes various skills that Plaintiff did not perform.  ECF No. 12 at 10-15.

As the Commissioner points out, Plaintiff's counsel never questioned the VE's classification of Plaintiff's prior work at any time during agency review.  In any event, the ALJ found that Plaintiff's prior work as a dispatcher was *not* past relevant work, that Plaintiff could *not* return to his past relevant work in construction, and that Plaintiff retained the RFC for

light work for which significant numbers of *unskilled* positions were available.  To the extent that the classification of Plaintiff's past work has bearing on the ALJ's assessment of Plaintiff's intellectual ability, such assessment is discussed below.  Otherwise, this claim presents no basis for finding that the ALJ's decision denying benefits is not supported by substantial evidence.

### B.  *Failure to Develop Record Regarding Intellectual Ability*

Plaintiff argues that the ALJ's error regarding the skill level of his past relevant work caused the ALJ to fail to fully and fairly develop the record by sending Plaintiff out for IQ testing, when Plaintiff's school records reflect an IQ between 50 and 60.  ECF No. 12 at 15.

In finding that Plaintiff did not have a severe impairment due to an intellectual disability, the ALJ found that the California Achievement Test score of 57 was not an IQ test, as required by the Listing.  The ALJ also observed that Plaintiff's history included employment as a cab dispatcher, classified as skilled work, and as a roofer, classified as semi-skilled.  She noted further that Plaintiff had been able to drive a van and a motorcycle, passing the licensing requirements for both vehicle types.  The ALJ found

that such history was inconsistent with a valid IQ of only 57 and inconsistent with Plaintiff's intellectual disability argument.  The ALJ pointed out that the record contained no evidence that any examining or treating source had questioned whether Plaintiff had a serious intellectual disability and there was no evidence of a diagnosis of intellectual disability. R. 14.

Listing 12.05 regarding intellectual disability (formerly referred to as mental retardation) requires that the claimant's impairment "satisf[y] the diagnostic description in the introductory paragraph" *and* any one of the four sets of criteria that follow it.[21]  The diagnostic description states that an individual is mentally retarded if they have a "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."[22]

---

[21] 20 C.F.R. Part 404, App. 1, Subpart P, 12.00A, ¶ 4.  Where adults have not had intelligence testing prior to age 18, a diagnosis of mental retardation satisfying the diagnostic requirement of this Listing could be inferred from the plaintiff's history and current functioning.  Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50,746, 50,753 (Aug. 21, 2000) (codified at 20 CFR Parts 404 and 416).

[22]Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) (finding that at the very least, to be considered for disability benefits under Listing 12.05, the claimant must

Subaverage general intellectual functioning refers to an IQ of about 70 or below on various standardized intelligence tests.[23]

In general, a claimant meets the criteria for "presumptive disability" under Listing 12.05B by presenting a valid IQ score of 59 or less.  Listing 12.05C requires that the claimant have a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation or function."[24]

It is well-settled that an ALJ has a basic obligation to fully and fairly develop the record.[25]  This obligation exists whether or not a claimant is represented by counsel.[26]  As a hearing is non-adversarial in nature,[27] the

---

meet all parts of the diagnostic definition in the introductory paragraph: "(1) significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22."  Once these three elements have been established, the court looks to paragraphs A ,B, C, and D to assess the severity of Plaintiff's mental retardation and its impairment on plaintiff's ability to work.

[23] DSM-IV at 42.

[24] 20 C.F.R. Part 404, App. 1, Subpart P, 12.05C.

[25] Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981); see also Zaldivar v. Apfel, 81 F. Supp. 2d 1353, 1359 (N.D. Ga. 2000).

[26] Zaldivar, 81 F. Supp 2d at 1359.

[27] Id.

duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.[28]  In all such cases, there must be a showing of prejudice before remand is warranted for further development.[29]  Prejudice has been found when the record "has evidentiary gaps which result in unfairness or 'clear prejudice.'"[30] An ALJ, however, is not required to order medical evidence to have a complete record unless the record establishes that it is necessary to enable the ALJ to render his decision.[31]

On this record, the Court finds that the ALJ did not err in failing to request IQ testing of Plaintiff.  The record supports the ALJ's conclusion that the test result relied on by Plaintiff was not a valid IQ test as recognized in the regulations.  In Plaintiff's school records, the

---

[28]  Mason v. Barnhart, 63 Fed. Appx. 284, 2003 WL 1793283, *2 (9th Cir. 2003).

[29]  Brown v. Shalala, 44 F. 3d 931, 935 (11th Cir. 1995); Kelley v. Heckler, 761 F. 2d 1538, 1540 (11th Cir. 1985).

[30]  Brown, 44 F. 3d at 935 (quoting Ware v. Schweiker, 651 F. 2d 408 (5th Cir. Unit A July 1981)).

[31]  Holladay v. Bowen, 848 F. 2d 1206 (11th Cir. 1988) (concerning the ordering of a consultative examination); Kelly, 761 F. 2d at 1540 (concerning additional medical information submitted by claimant).

standardized test identified only as "California", which appears to have been administered in fifth grade, is categorized as a "scholastic ability" test and not an IQ test. *See* R. 227. Plaintiff points to no other evidence in the record that supports his claim that his IQ falls in the very low range of 50 to 60. As the ALJ found, no examining or treating physician notes reflect that Plaintiff had such a serious intellectual disability. R. 14.

It also was not error for the ALJ to rely on the VE's testimony that Plaintiff's past work was performed at the skilled (dispatcher) and semi-skilled (construction worker) level. Even if the dispatcher work was not performed at the level of substantial gainful activity for purposes of determining Plaintiff's past relevant work, it was plainly relevant for purposes of the ALJ's discussion of Plaintiff's activities and functional abilities in connection with his claim of intellectual disability. Likewise, Plaintiff's testimony that as a construction worker he built houses, did roofing work, and used tools is relevant to the ALJ's assessment of his claim. Plaintiff did not testify that he stopped working due to any intellectual limitations or that he received any accommodations due to intellectual limitations, and there is nothing in the record that suggests his

inability to work is connected to such limitations.  Finally, the ALJ pointed

to other activities as inconsistent with Plaintiff's intellectual disability claim,

such as the fact that Plaintiff tested and became licensed to drive

automobiles and motorcycles.  R. 14.

In sum, the ALJ's determination that Plaintiff did not have a severe

intellectual impairment is supported by substantial evidence and the record

was adequate for the ALJ to review this claim.  Because the record does

not establish that consultative IQ testing was necessary in order for the

ALJ to render a decision, the Court finds that Plaintiff has not

demonstrated that he was prejudiced by the ALJ's failure to order such

testing.

## C. *ALJ's Use of Grids Regarding Age*

Plaintiff contends that the ALJ mechanically applied the Grids to find

that he was not disabled even though five months after the decision, when

Plaintiff turned 55, the Grids required a finding of disability given his other

vocational factors.  ECF No. 12 at 19.

The ALJ determined that Plaintiff was age 48, a "younger individual",

at the alleged onset of disability, but that his age category changed to

"closely approaching advanced age" at the time of the hearing when he was 54.  R. 18-19.  The ALJ found that Plaintiff did not have the RFC to perform the full range of light work due to additional limitations, and therefore the ALJ properly used the Grids *only as a framework* for her decision and obtained the testimony of a VE to determine that there was other work that Plaintiff could perform given his age, experience, and RFC. R. 19-20.

In the Eleventh Circuit, a claimant can rebut an ALJ's age findings of fact by proffering substantial credible evidence that his ability to adapt to other work is less than the level established by the Grids for persons of the claimant's age.  *Reeves v. Heckler*, 734 F.2d 1351 (11th Cir. 1984). Plaintiff points to *no* evidence showing that his ability to adapt was less than that of persons of his age category, and therefore he has not shown that the ALJ's finding was erroneous.  *Reeves*, 734 F.2d at 525.

Moreover, the question of whether the claimant should have been treated as a person of advanced age or closely approaching advanced age is inconsequential where the ALJ does not rely exclusively on the Grids and substantial evidence supports the ALJ's determination that the

claimant was not disabled.  *Miller v. Comm'r of Soc. Sec. Admin.*, 241

Fed. Appx. 631, 636 (11th Cir. 2007) (issue whether ALJ erred in treating

54-year-old as "person of advanced age" or "closely approaching advanced

age" under Grids was "essentially theoretical" because ALJ did not rely

exclusively on grids in making disability determination and utilized

testimony of VE).   Here, the ALJ utilized the testimony of the VE,  based

on a hypothetical that assumed a person of Plaintiff's age, education,

experience, and RFC, in finding that Plaintiff was not disabled.  Plaintiff

makes no argument that the ALJ's findings regarding Plaintiff's RFC are

not supported by substantial evidence.  Accordingly, on this record, the

undersigned finds that the Commissioner's decision regarding Plaintiff's

age category, and denying benefits, is supported by substantial evidence.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the

decision of the Commissioner should be **AFFIRMED**.

**DONE AND ORDERED** this 30th day of December 2016.

*s / Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.